## B. F. Hoffman, Inc., to use, v. Cox and Brennan.

*Joseph W. Henderson,* for plaintiff; *Joseph A. Culbert,* for defendants.

ALESSANDRONI, J., July 9, 1929.—On Jan. 27, 1925, B. F. Hoffman, Inc., leased a Ford coupé to Cox. The lease was assigned to the Massachusetts Bonding and Insurance Company, which, in turn, assigned it to the Wagner-Taylor Company. The lease was for a period of twelve months, and provided for an initial rental payment of $218.73 and monthly payments of $36.43. At the expiration of the lease the car was to be surrendered back to the lessor, but if the lessee had complied with all the terms of the lease, he was given the option of purchasing the car upon a further payment of $1. There were certain provisions for insurance to protect the lessor and for the securing of future rental payments by promissory notes. Application for a certificate of title was made by Cox, the application stating the car was subject to encumbrances of $437.16 in favor of Wagner-Taylor Company. Cox defaulted on the instalment due May 27, 1925.

About July 30, 1925, Brennan, the added defendant, was introduced to Cox and purchased the car for $275. He was shown a certificate of title issued to Cox by the State Highway Department, and testified that in the place where encumbrances were to be stated there was a hole immediately following the dollar sign. Subsequently, the car was found in Brennan's possession and replevied.

At the trial, the presiding judge affirmed the plaintiff's motion for binding instructions and directed a verdict in favor of the plaintiff on the ground that this was a bailment lease and no title had passed to Brennan.

The defendant, Brennan, now moves for a new trial and for judgment n. o. v. on the grounds, first, that the instrument was not an instalment lease, but was in reality a conditional sale agreement; and, second, that the issuance of a title certificate by the Pennsylvania Department of Highways, together with the delivery of possession to Cox, gave Cox an apparent ownership upon which Brennan, as a *bona fide* purchaser for value, could rely.

The defendant's first contention is untenable. The instrument in question was in the form of a lease and all its terms were those used ordinarily in leases. Such bailment leases have been upheld in Pennsylvania. In the case of Leitch v. Sanford Motor Truck Co., 279 Pa. 160 (1924), the plaintiff delivered several trucks to one Nicholson (a truck dealer) under a bailment lease. Nicholson pledged the trucks to a bank and then defaulted in payment. It

was held that the plaintiff could recover, the court saying: "Nor would the fact that the bailee put the truck on exhibition in a sales room, where he was engaged in buying and selling these vehicles, convert the bailment into a conditional sale, or estop the owner from asserting his title. The claim of property in the pledgee is at best no higher than that in the lessee; it was subject to the 'bailment lease' with the original owner. On the breach of the covenant to pay instalments of rent, the owner was entitled to immediate possession. The bailee could not defeat this right by pledging the machine to a third person."

In Powel *v* Kahler, 86 Pa. Superior Ct. 419 (1926), a similar bailment lease of a truck was upheld. The case of Wilson *v*. Weaver, 66 Pa. Superior Ct. 599 (1917), again affirms the proposition that "Provisions for interest and promissory notes are recognized as being legitimate parts of a bailment contract in Pennsylvania." These cases establish the validity of a bailment lease.

The cases cited by counsel for the defendant are clearly distinguishable on their facts, although the excerpts quoted are broad enough and sufficiently general to seem applicable to this case. The defendant quotes three cases to show that this lease is a conditional sale, but the distinctions between these cases and the case at bar are obvious. Root *v*. Republic Acceptance Corp., 279 Pa. 55 (1924), was a case in which A sold to B but retained possession. B only received the bill of sale and the storage receipt. B then executed a bailment lease to A, who was in bad financial condition. This was held not to be a bailment because "there can be no bailment if there was no sale; and the sale was void as to creditors. . . . A sale of personal property leaving the vendor in possession and without doing anything to indicate a change of ownership is fraudulent as against creditors." It is thus seen that B never received title to the subject of the lease and, therefore, was not in a position to issue a bailment lease. The court analyzed the transaction as really being a pledge. In the case of Com. *v*. One Oldsmobile Automobile, 8 D. & C. 169 (1926), the written agreement was marked a conditional sale and its terms were clearly those of a conditional sale. Of course, this has no application to the case at bar.

In the case of Bank of Secured Savings *v*. Rudolph, 83 Pa. Superior Ct. 439 (1924), an agreement of sale was made whose terms were those of a conditional sale agreement. This instrument referred to a lease and the lease itself was a bailment lease. Naturally, the court construed the two instruments together, and finding that the agreement of sale was a conditional sale and that the lease used the words "buyer and seller," "purchase price" and "to be used in connection with time sales in Pennsylvania, New Jersey and Illinois," it rightly construed the entire transaction as being a conditional sale. In the case at bar there are no such words in the lease and there is no conditional sale agreement. The defendant's cases, therefore, are no authority for the decision of this case. The instrument here clearly comes within the Pennsylvania conception of a bailment lease, and the trial judge properly so held.

The defendant's second contention that if this is a bailment lease, the plaintiff has so clothed Cox with the *indicia* of ownership as to raise an estoppel, is also without merit. The basis of this argument is that the granting of possession to Cox, together with the application for a certificate of title in Cox's name, resulting in the issuance of a clear certificate of title to Cox, made Cox appear as the owner. The issuance of certificates of title was made under the provisions of the Act of May 24, 1923, P. L. 425. This act is osten-

sibly for police regulation, and is not intended as a means for the issuance of muniments of title. This is indicated by the wording of the act. In section 1 it is stated: "The term 'owners,' as used in this act, shall include the person or persons having a motor vehicle in his or their possession, custody, or control, under a lease or contract of conditional sale or other like agreement."

Section 2 states that an application for a title certificate "shall contain a full description of the motor vehicle, together with a statement of the owner's title, and of any liens or encumbrances upon said motor vehicle, and whether possession is held under a lease, contract of conditional sale, or other like agreement."

The assignment of title by B. F. Hoffman, Inc., and the application for title by Cox stated that the application for title "by purchase or lease" is subject to an encumbrance of $437.16. Such assignments and applications are made mandatory by the act, and, as indicated above, the certificates issued are not muniments of title.

Moreover, the mere fact that Brennan saw that there was a hole immediately following the dollar-mark, indicating encumbrances, should have put him on notice. Inasmuch as a certificate of title is not an indication of absolute ownership, and as the condition of the certificate itself was sufficient to put a man on notice, it cannot be said that Brennan relied on any *indicia* of ownership or was a *bona fide* purchaser for value.

The motion of defendant for judgment *non obstante veredicto* is overruled. An exception to this action of the court is hereby noted for the defendant. The rule for a new trial is discharged and judgment directed to be entered upon the verdict upon payment of the jury fee.